SIGNED.

Dated: March 7, 2012

**James M. Marlar, Chief Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>TURNKEY DEVELOPMENT LLC,<br>                       Debtor. | Chapter 11<br>No. 4:11-bk-34766-JMM |
| NATIONAL BANK OF ARIZONA,<br>                       Movant,<br>v.<br>TURNKEY DEVELOPMENT LLC,<br>                       Respondent. | **MEMORANDUM DECISION** |
| HSBC BANK USA, N.A., as successor trustee, etc.,<br>                       Movant,<br>v.<br>TURNKEY DEVELOPMENT LLC,<br>                       Respondent. | |

On March 6, 2012, the court heard evidence on the motions filed by two secured creditors, National Bank of Arizona ("NBA") and HSBC Bank, USA, as successor trustee, etc., on two separate and unrelated parcels, which seek to lift the automatic stay imposed by 11 U.S.C. § 362(a) (ECF Nos. 22 and 29.) Arguments were presented by all sides to the controversies, in the form of written pleadings. Having taken the matters under advisement, the court now rules. It bases its decision upon the uncontested facts in the pleadings, the

stipulations of the parties, the evidence adduced at the hearing and the administrative file in this case.

## **FACTS**

### **131 Amando Montosa, Amado, AZ 85645 (Rex Ranch) (HSBC Bank USA)**

The first property at issue can be described, in shorthand fashion, as the "Rex Ranch" property in Amado, Arizona. On December 28, 2004, Business Loan Center ("BLC"") loaned Rex Ranch $1,461,000.00 which is evidenced by a Promissory Note dated December 28, 2004. This debt is currently owned, held and/or serviced by HSBC, the Movant (BLC and HSBC may be used interchangeably).

As security for the loan, Rex Ranch provided HSBC with a Deed of Trust with Security Agreement and Assignment of Rents dated December 28, 2004, in the Rex Ranch real property (Exs. A and B) (Stipulated Fact, Joint Pretrial Statement).

HSBC is now the current holder of a Note and Deed of Trust, as of June 27, 2011 (Ex. D) (Stipulated Fact, Joint Pretrial Statement).

In or about July, 2010, Rex Ranch stopped making payments on its Loans to HSBC and the Loans went into default.

On or about September 27, 2011, HSBC noticed a Trustee's Sale on the Rex Ranch property, setting the sale for December 28, 2011 (Ex. E). The debt at that time was approximately $1,495,488.66 (Stipulated Fact, Joint Pretrial Statement).

After the Trustee's Sale was noticed, the Rex Ranch obligors (Nygaard family), through Patricia and Wayne Ross, quitclaimed the real estate to the Debtor (Ex. F). This transfer was recorded on October 11, 2011. The Debtor paid no consideration or money, at that time or to the present, to the then owners.

In addition, since acquiring title to the Rex Ranch, the Debtor has made no payments to HSBC. Nor has it paid any of the outstanding the past due real property taxes on the Rex

Ranch, which are due in the approximately amount of $73,536.87 (Stipulated Fact, Joint Pretrial Statement).

There is no equity in the property known as the Rex Ranch. Undisputed liens against it exceed its scheduled value of $650,000 (Debtor's Schedule D) (Ex. J).

### 11139 North Olympic Place, Tucson AZ 85737 (National Bank of Arizona)

The Debtor owns this property, a single-family residence, also by virtue of a quitclaim deed, acquiring it on or about September 17, 2011 (recorded January 9, 2012) (Ex. G). The Debtor paid no consideration or cash for this acquisition. Past due real property taxes are $1,872.61 (Ex. H). The Debtor's schedules indicate its belief that this property is worth $325,000 (Schedule D to Ex. J).

The creditor holding the principal lien is NBA.

On November 27, 2007, NBA extended to Carol C. Mueller a loan in a principal amount of $277,500 (Ex. A). This loan was modified in May, 2009 (Ex. C).

To secure payment of the loan, Ms. Mueller simultaneously executed a Deed of Trust (Ex. B), which was recorded.

When Ms. Mueller defaulted on her loan payments, NBA began a non-judicial foreclosure sale under the powers granted in the Deed of Trust (Exs. D and E). The sale date was scheduled for December 23, 2011 (Ex. E).

The Quitclaim Deed to Debtor was executed September 17, 2011, but not recorded until January 9, 2012 (Ex. G), two days before this bankruptcy case was reinstated. As noted above, no consideration was paid to Ms. Mueller.

Since acquiring the property, the Debtor has made no payments to NBA, nor has it made payment on the delinquent real estate taxes.

As of March 6, 2012, NBA is owed approximately $303,766.64. Delinquent real property taxes are $1,872.61. The Debtor values the property at $325,000.

There is no equity in this property. Were it to be sold, after deduction of a 7% figure for a real estate commission and closing costs ($22,750), not enough would remain to pay the outstanding taxes and debt to NBA.

## **THE DEBTOR'S CASE**

The corporate Debtor initially filed the case, without benefit of counsel, on December 28, 2011. The case was dismissed two days later, because the corporation was not represented by counsel. On January 11, 2012, the case was reinstated when counsel made an appearance for the Debtor.

The Debtor has no operating business. Its only significant assets are the two parcels recently acquired by Quitclaim Deeds (Schedule A to Ex. J). Its only other parcel of real estate is a vacant lot, valued at $40,000, which has no liens or debt against it (Schedule A to Ex. J).

Its personalty (Schedule B to Ex. J) consists principally of the furniture items necessary for the 38 casitas located on the Rex Ranch property. Even so, they do not have much value.

The Debtor lists only one unsecured creditor, the Nygaard family, for $200,000. Presumably, this is the "future benefit" promised for the Quitclaim Deed.

No other unrelated debt exists in Schedule F, Unsecured Creditors.

The Debtor's "plan" is to start a major enterprise at the Rex Ranch property, consisting of a wellness center. It will be some type of "outpatient" facility. Its occupants, and income, will come from various sources, including the United States Government, through its federal Probation Office, according to Mr. Murphy Kittrell, one of the principals of the Debtor. To date, no contracts with the federal government have been committed, the facility is neither staffed nor certified, and no necessary seed money has been raised. The Debtor has no employees, and no income generated by Rex Ranch. The entire concept, at this point, is both visionary and speculative.

No plan has yet been filed.

# THE LAW

## 11 U.S.C. § 362(d)(2)

The court is prohibited from confirming visionary plans. Acequia, Inc. v. Clinton (In re Acequia, Inc.), 787 F.2d 1352, 1364 (9th Cir. 1986). The Debtor's plan, as proposed, is wholly speculative. Consequently, the Debtor has failed to persuade the court that it is in possession of an "effective" plan. That is the second prong of 11 U.S.C. § 362(d)(2).

The first prong, "no equity," has been satisfied by both creditors. 11 U.S.C. § 362(d)(2). Therefore, the stay can be lifted on that legal basis.

## 11 U.S.C. § 362(d)(4)

The court also finds, based on the evidence presented, and the time periods involved, that the Debtor engaged in a scheme to hinder both of the secured creditors involved in this case, to wit, NBA and HSBC, from exercising their contractual deed of trust remedies against collateral, on defaulted debts owed to them.

The scheme of acquiring properties that are in default, by quitclaim and for no consideration, is an old one. Courts of equity do not look kindly upon the tactic of using Chapter 11 as a sword to stave off the rights of legitimate creditors who have advanced actual monies, in good faith, in the expectation of repayment.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added subsection (d)(4) to § 362. The general purpose of this subsection, according to the legislative history, is to curb abusive bankruptcy filings. See H.R. Rep. No. 109–31(1) at 70 (2005), as reprinted in 2005 U.S.C.C.A.N. 88, 138–39.

As amended by the Bankruptcy Technical Corrections Act of 2010, § 362(d)(4) provides in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall

grant relief from the stay provided under subsection (a) of this section ....—

....

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either--

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

The phrase "delay, hinder, or defraud" was amended in 2010 by Congress to make the subsection consistent with other Code provisions that use the same phrase, such as sections 548(a)(1) and 727(a)(2). 3 Collier on Bankruptcy ¶ 362.05[19][a]. Significantly, the change put the phrase in the disjunctive, meaning that a court can find a violation if the debtor has acted with any one of the three following intents: intent to hinder, intent to delay, or intent to defraud. See also Norton Bankr. Law & Prac. 3d, Editor's Comment to § 362(d) (noting that BAPCPA had used the term "and" instead of "or").

Neither the bankruptcy code nor the legislative history gives an indication of what qualifies as a "scheme". "Scheme" is commonly defined as follows:

> 1. A systemic plan; a connected or orderly arrangement, esp. of related concepts<legislative scheme>. 2. An artful plot or plan, usu. to deceive others <a scheme to defraud creditors>.

Black's Law Dictionary (9th ed. 2009) (Thompson Reuters).

In Duncan & Forbes Dev., Inc., 368 B.R. 27 (Bankr. C.D. Cal. 2006), the bankruptcy court believed the "second of these definitions is most relevant to § 362(d)(4): an artful plot or plan." An 'artful' plot or plan, in this context, the court takes to be a plan adopted for the nefarious purposes specified in the statute: to delay, hinder and defraud creditors through multiple bankruptcy filings or an improper transfer of property." Id. at 32. "Thus,

§ 362(d)(4)(A) scheme is an intentional artful plot or plan to delay, hinder or defraud creditors." Id.

Generally, the court must infer the existence of a scheme from circumstantial evidence. The party claiming it has the burden of providing sufficient evidence for the trier of fact to infer the existence and content of the scheme. Id.

Here, the necessary burden of proof was satisfied in order to grant both creditors stay relief under 11 U.S.C. § 362(d)(4).

A separate order will enter. FED. R. BANKR. P. 9021. Any party aggrieved shall have 14 days within which to appeal. FED. R. BANKR. P. 8002.

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Noticing Center ("BNC") to the following:

Attorney for Debtor
Attorney for National Bank of Arizona
Attorney for HSBC Bank USA, N.A.
Office of the U.S. Trustee

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>TURNKEY DEVELOPMENT LLC,<br>　　　　　　　　　Debtor. | Chapter 11<br>No. 4:11-bk-34766-JMM<br>**ORDER** |
| NATIONAL BANK OF ARIZONA,<br>　　　　　　　　　Movant,<br>v.<br>TURNKEY DEVELOPMENT LLC,<br>　　　　　　　　　Respondent. | |
| HSBC BANK USA, N.A., as successor trustee, etc.,<br>　　　　　　　　　Movant,<br>v.<br>TURNKEY DEVELOPMENT LLC,<br>　　　　　　　　　Respondent. | |

　　Consistent with the court's Memorandum Decision,

　　IT IS HEREBY ORDERED GRANTING the motions for relief from stay filed by the following secured creditors (ECF Nos. 22 and 29) regarding the following properties:

| | |
|---|---|
| 1 | • 131 Amando Montosa, Amado, AZ 85645 (Rex Ranch) (HSBC Bank USA) |
| 2 | • 11139 North Olympic Place, Tucson, AZ 85737 (National Bank of Arizona) |

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Noticing
Center ("BNC") to the following:

Attorney for Debtor
Attorney for National Bank of Arizona
Attorney for HSBC Bank USA, N.A.
Office of the U.S. Trustee